IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.
05 JUL 21 PM 2:08
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| JANE DOE # 1, by and through her next friend (mother, Jane Doe # 2), and JANE DOE # 2, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 04-2283 Ma V |
| MEMPHIS CITY SCHOOLS, et al., ) ) | |
| Defendants. ) | |

## ORDER ON PENDING MOTIONS

This case arises from the alleged sexual abuse of Jane Doe # 1, a minor student at Kirby High School ("KHS"), by one of her instructors at KHS. Plaintiffs allege causes of action under 20 U.S.C. § 1681 ("Title IX"), 42 U.S.C. § 1983, and state law.

Before the court are five pending motions: 1) Plaintiffs' "motion for partial summary judgment as to liability of Defendant Danny Peterson as to all counts of the complaint," filed March 14, 2005, 2) the motion for summary judgment of Defendant Glynn Faulkner, filed April 1, 2005, to which Plaintiffs responded on June 17, 2005, 3) the motion for summary judgment of Defendant Thomas Killough, filed April 1, 2005, to which Plaintiffs responded on June 17, 2005, 4) the motion for summary judgment of Defendants Memphis City Schools ("the school system") and Bob Archer, filed

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on __7-22-05__

April 7, 2005, to which Plaintiffs responded on June 17, 2005, and 5) Defendants' motion to strike Plaintiffs' memorandum of law opposing Defendants' motions for summary judgment, filed June 29, 2005, to which Plaintiffs responded on July 1, 2005. For the following reasons, Defendants' motion to strike is DENIED. The motions for summary judgment of Killough, Archer, and the school system are GRANTED on § 1983 and Title IX claims, and the state claims against those defendants are DISMISSED without prejudice.

## I. Background

The following facts are taken from the complaint. From November, 2002, through February, 2003, Defendant Danny Peterson was a "volunteer" band instructor at KHS, compensated privately by the KHS band booster club. Plaintiff Jane Doe #1 ("Doe"), then a minor, was a member of the KHS band. (Compl. ¶¶ 9-10.) Peterson took Doe off campus to area motels during school hours, where they engaged in sexual activities. Peterson never signed Doe out to leave campus. (Id. ¶ 11.) Defendant Glynn Faulkner, the KHS band director, knew that Peterson was taking Doe off campus during school hours. (Id. ¶ 12.)

On May 27, 2003, Peterson harassed Doe in the KHS band room after school. (Id. ¶ 15.) On or about May 30, 2003, Plaintiff Jane Doe #2 ("Doe's mother") learned of Peterson's conduct and contacted Defendant Thomas Killough, principal of KHS. Killough pulled Doe's attendance records, which showed numerous unexcused absences about

which KHS had never notified Doe's mother. (Id. ¶ 14.) Doe's mother then contacted Defendant Bob Archer, associate superintendent for the school system, about Peterson's conduct. Archer said that he would not act unless law enforcement acted. (Id. ¶ 20.)

After Doe's mother reported Peterson's activities, Peterson began telephoning and harassing Doe. (Id. ¶ 24.) In early June, 2003, Doe's mother petitioned the General Sessions Criminal Court of Shelby County for an order of protection against Peterson. On June 30, the date of the scheduled hearing on the petition, an unknown person or persons shot at Doe's mother's automobile, which was parked in the driveway of her home. (Id. ¶¶ 26-27.) The court granted the protective order against Peterson. (Id. ¶ 28.) After several unsuccessful attempts by Doe's mother, Doe obtained a "safety" transfer to another high school in the school system for her senior year. (Id. ¶ 37.) The Plaintiffs allege that the school system is deliberately indifferent to the "wholesale sexual misconduct" of faculty and staff that occurs throughout the school system. (Id. ¶ 36.)

## II. Jurisdiction

Plaintiffs bring claims under § 1983 and Title IX. Thus, the court exercises federal-question jurisdiction under 28 U.S.C. § 1331. The court has jurisdiction over pendant state law claims under 28 U.S.C. § 1367.

3

## III. Legal Standard for Summary Judgment

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co.

4

v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

## IV. Motion to Strike

The Defendants move to strike Plaintiffs' memorandum of law in response to the Defendants' motions for summary judgment because the memorandum was not timely filed. The court allowed Plaintiffs until June 17, 2005 to respond to the respective motions for summary judgment. Plaintiffs timely filed responses to the statements of undisputed facts and responses to various other motions. In their responses, Plaintiffs referred to a Memorandum of Law and Appendices. The memorandum of law appears not to have been filed until June 24, 2005, and defense counsel did not receive a copy until June 27, 2005.

The court has discretion to consider late-filed materials like Plaintiffs' memorandum of law. See, e.g., Featsent v. City of Youngstown, 70 F.3d 900, 906 (6th Cir. 1995); Zeyed v. U.S., 221 F. Supp. 2d 813, 815 n.1 (N.D. Ohio 2002). A legal memorandum is not part of the evidentiary record, and the Defendants have not demonstrated any prejudice. In addition, the court would not wish to rule on the Defendants' motions for summary judgment without

5

hearing and considering the Plaintiffs' legal arguments. Therefore, the court concludes that the untimeliness of Plaintiffs' memorandum of law is harmless error and DENIES the Defendants' motion to strike.

## V. Killough's Motion for Summary Judgment

Plaintiff brings claims against Killough under § 1983 and Title IX. As a preliminary matter, only federally funded educational institutions are subject to liability in private causes of action under Title IX. See Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 636 (1999). Thus, Title IX does not provide a cause of action against individual defendants, and any Title IX claims against Killough or Archer must be dismissed.

Plaintiffs may bring a claim against Killough under § 1983 if Killough, acting under color of state law, deprived Doe of constitutional rights. "It is undisputed that the Due Process Clause of the Fourteenth Amendment protects the right of a child to be free from sexual abuse inflicted by a public school teacher."[1] Doe v. Warren Consolidated Schools, 93 Fed. Appx. 812, 818 (6th Cir. 2004)(unpublished)(citing Doe v. City of Roseville, 296 F.3d 431, 438 (6th Cir. 2002)). Because Killough is not the individual

---

[1] The court assumes, for purposes of this motion, that Peterson was acting under color of state law and that his conduct deprived Doe of a constitutional right.

6

who engaged in sexual contact[2] with Doe, his conduct must be evaluated under the § 1983 standards for "supervisory liability." See id.; Roseville, 296 F.3d at 439. A defendant is not liable under § 1983 if he was merely "sloppy, reckless or negligent in the performance of [his] duties." Roseville, 296 F.3d at 439. Rather, the Plaintiffs must show that Killough acted with "deliberate indifference" to Doe's constitutional rights. Doe v. Claiborne County, Tennessee, 103 F.3d 495, 513 (6th Cir. 1996)(quoting Barber v. City of Salem, 953 F.2d 232, 240 (6th Cir. 1992). The courts have interpreted this standard to require that plaintiffs show "the defendants' conduct amounted to a tacit authorization of the abuse" or that the defendant "encouraged the specific incident of misconduct or in some other way directly participated in it." Claiborne County, 103 F.3d at 513 (citing Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)).

Plaintiffs have offered no evidence and do not appear to contend that Killough had knowledge of any sexual contact between Peterson and Doe, or any other unlawful behavior on Peterson's part before May 30, 2003, when Doe's mother discovered the abuse and informed Killough. (See Doe # 2 Depo. 128:10-14; Doe # 1 Depo. 40:3-8.) The latest incident of abuse is alleged to have occurred on May 27, 2003. Because Killough lacked any prior knowledge of

---

[2] The court agrees with Plaintiffs and rejects the Defendants' characterization of the alleged relationship between Peterson and Doe as an "affair."

Peterson's conduct or the risk of harm to Doe, Killough's actions fall well short of the deliberate indifference standard under § 1983. See Claiborne County, 103 F.3d at 513; Roseville, 296 F.3d at 440-41. Although Plaintiffs offer evidence that Killough has been reprimanded for various professional infractions and failed to respond properly when Doe's mother informed him of Peterson's actions, that evidence does not support the conclusion that Killough tacitly authorized or encouraged or participated in any sexual abuse. Thus, there is no genuine issue of material fact, and the Plaintiff's federal claims against Killough must be dismissed.

## VI. Motion for Summary Judgment of Bob Archer and Memphis City Schools

### A. Bob Archer

It is undisputed that Archer did not know of Peterson's conduct until the summer of 2003, when Plaintiffs sought to transfer Doe to another high school within the school system. (Doe # 2 Depo. 85:14-86:1.) Because Archer, too, lacked prior knowledge of any risk of harm to Doe, he cannot be held liable under § 1983's "deliberate indifference" standard. Thus, the federal claims against Archer must be dismissed.

B. The School System

1. Title IX

Plaintiffs assert claims against the school system under Title IX and § 1983. Title IX does not permit recovery against a school district for the sexual harassment of a student by a teacher unless there is "actual notice to a school district official ... with authority to take corrective action." Gebser v. Lego Vista Independent School District, 524 U.S. 274, 285, 290 (1999). The school official's conduct upon receiving notice must amount to deliberate indifference to the risk of harm to the student. Id. at 291.

"Title IX contains important clues that Congress did not intend to allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice. Title IX's express means of enforcement – by administrative agencies – operates on an assumption of actual notice to officials of the funding recipient." Id. at 288. Defendant Faulkner was the KHS band director when the events giving rise to this suit occurred. Defendant Peterson was an assistant, part-time band instructor. Plaintiffs offer evidence that Faulkner, who is a teacher in the school system, might have known about Peterson's conduct and that Faulkner had the authority to fire Peterson or otherwise prevent Peterson's contact with Doe.

9

Plaintiffs' evidence, however, is not sufficient to show that Faulkner was an official whose knowledge could subject the school system to liability under Title IX.³ To qualify a classroom teacher or band director, without more authority, as an "official" under Gebser would undermine the Supreme Court's rejection of vicarious liability in private Title IX actions. Indeed, in that decision, the knowledge of the accused teacher, who without question could have ended his own alleged sexual relationship with the plaintiff, was found insufficient to constitute notice to the school district. See id. at 291 (rejecting theory of notice offered by the dissent).

Decisions applying Title IX to sexual harassment have required knowledge and/or notice to those with the administrative authority to make discretionary decisions on behalf of the school system, such as superintendents or principals. See, e.g., Gebser, 526 U.S. at 654 (holding that notice of inappropriate comments by a teacher was "plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student"); Vance v. Spencer Co. Public School Dist., 231 F.3d 253, 259 (6th Cir. 2000)(finding notice where plaintiff notified teachers and principals); Warren ex rel. Good v. Reading School

---

³ There is some question about Peterson's status when he engaged in the alleged conduct. Even if the facts are analyzed under Title IX's "peer-to-peer" sexual harassment standard, the school system must receive actual notice and act with deliberate indifference to be held liable. See Davis Next Friend LaShonda D., 527 U.S. at 649-50.

10

Dist., 278 F.3d 163, 171-73 (3d Cir. 2002)(finding that principal, but not guidance counselor, was "appropriate person" under Title IX); Wilson v. Luttrell, 230 F.3d 1361, at *6 (6th Cir. 2000) (unpublished) (evaluating notice to principal and superintendent); Schroeder v. Maumee Bd. of Educ., 296 F. Supp. 2d 869, 880 (N.D. Ohio 2003)(holding that notice to principal and assistant principal was sufficient notice to school system). The Plaintiffs have not cited, and the court has not located, any authority holding a school system liable under Title IX based on the knowledge of a lower-ranking school employee.

The only individuals in this suit who would qualify as "officials" under Title IX are Killough, the KHS principal, and Archer, an assistant superintendent. As discussed above, neither Killough nor Archer had notice of any risk of harm to Doe. Thus, the school system did not have actual notice of any sexual harassment of Doe and did not act with deliberate indifference to her rights. The Title IX claim against the school system must be dismissed.

### 2. § 1983

The school system can be found liable under § 1983 if "the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." Claiborne County, 103 F.3d at 507 (citing Monell v. Dept.

11

of Social Servs., 436 U.S. 658, 690-91 (1978)). Where, as here, a plaintiff alleges that a school system customarily fails to act to prevent sexual abuse, the plaintiff must show 1) the existence of a clear and persistent pattern of sexual abuse by school employees, 2) notice or constructive notice to the school system, 3) the school system's tacit approval of the unconstitutional conduct, such that its deliberate indifference in failing to act can be said to amount to an official policy of inaction, and 4) that the school system's custom was the "moving force" or direct causal link in the constitutional deprivation. Id. at 508 (applying municipal liability standard in City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)).

The Plaintiffs argue that the school system "has a clearly established pattern of transferring problem employees to other schools instead of rid[d]ing itself of the problem employee and properly documenting said employee's misconduct." (Pl. Memo. in Opp. at 12.) The Plaintiffs offer the statement of Dr. Carol Johnson, superintendent of the school system, that "[t]here exists at Hamilton High an environment that either ignores or condones sexual harassment between students and staff and promotes a climate of fear and intimidation that threatens the safety and well-being of the student body and staff." Dr. Johnson's statement does not implicate KHS or the school system. The existence of such an environment at one high school is not evidence of a system-wide

12

custom or policy of ignoring or condoning sexual harassment. That the superintendent has spoken publicly against such an environment at one high school is, in fact, evidence to the contrary.

The Plaintiffs offer documentation from the school system's personnel files about the sexual misconduct of school system employees. The files covering November, 2003, through March, 2005, show seven instances of alleged sexual misconduct by school personnel toward students. In five of those instances, the employee in question was terminated or allowed to resign. (Pl. Memo. in Opp. at 13-14; Pl. Statement of Mat. Facts Ex. A.) The other two cases involved inappropriate verbal comments, and in each case the offending teacher was suspended or received a documented reprimand. (Id.) Defendant Peterson was terminated from his position as assistant band director after Killough was informed of the alleged incident with Doe, although the parties dispute whether Peterson was allowed to return to campus afterward. This evidence is insufficient to create a genuine issue of material fact about whether the school system had an "official policy of inaction" that reflected a deliberate indifference to the sexual abuse of students. Nor does the Plaintiffs' evidence show that sexual abuse by teachers was widespread or that any school system policy or custom was a "moving force" in the abuse of Doe.

The instructive decision here is <u>Claiborne County</u>. In that case, the plaintiff was sexually abused by one of her teachers.

Three years earlier, there had been allegations that the teacher had inappropriately touched a female student at the middle school where he was employed. After an inconclusive investigation, the teacher was told "not to be so friendly with the students." Claiborne Co., 103 F.3d at 502. A few months after the earlier incident, the Department of Human Services ("DHS") informed the superintendent that the teacher had been accused of abusing nine different girls at the school. Shortly thereafter, DHS sent the superintendent another letter informing him that "immediate action" should be taken to ensure that the teacher would have "no access to or contact with any child." Id. The teacher reached a "pre-trial agreement" with the DHS, in which the DHS would not press criminal charges and would not actively seek suspension of his teacher's license, but would inform the school board to enable it to take further action. Id. The school board later decided to rehire the teacher at a different middle school. When the teacher sought to explain the prior DHS charges to his new principal, the principal stated that he "didn't want to hear it." Id. at 503. The principal never inquired about the teacher's work history. Id. When the school year began, a rumor surfaced about the teacher's "possible inappropriate behavior with a female student." Id. On another occasion, the school guidance counselor informed the principal about a female student's complaint that the teacher suggested that they "get naked." Shortly afterward, the teacher's sexual abuse of

14

the plaintiff began. Id.

The plaintiff claimed that her abuse was the result of the school board's "good old boys network," in which the school board "routinely acquiesced to the misbehavior of its employees in order to protect its 'good old boys.'" Claiborne County, 103 F.3d at 509. The Sixth Circuit held:

> It may be freely conceded that the board members, individually, might have been recklessly passive in the performance of their duties. One could even argue that they were reckless in their failure, collectively, to inquire further into the allegations lodged against [the teacher] and/or to clarify the results of the DHS investigation. It cannot be said, however, that their failure to act in [the teacher's] case was the direct result of a custom in the sense that the School Board consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct.

Id. at 508. The evidence suggesting a custom or policy in this case falls well short of that held insufficient in Claiborne County. Thus, the Plaintiffs' § 1983 claims against the school system must be dismissed.

## VII. State Claims

Plaintiffs also seek to recover against the school system, Archer, and Killough under state common and statutory law. All three defendants are covered by the Tennessee Governmental Tort Liability Act ("TGTLA"), which provides that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter...." T.C.A. § 29-20-307. The Sixth Circuit has

15

held that federal district courts may decline to exercise supplemental jurisdiction over TGTLA claims because "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction [under 28 U.S.C. § 1367(c)(4)]." Gregory v. Shelby County, Tenn., 220 F.3d 433, 446 (6th Cir. 2000).

Because of the clear preference for state jurisdiction over TGTLA claims, and because all federal claims against the school system, Archer, and Killough have been dismissed, the court dismisses, without prejudice, all pendant state claims against these defendants. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Schieb v. Humane Soc. of Huron Valley, 582 F. Supp. 717, 726 (E.D. Mich. 1984).

16

## VIII. Conclusion

For the foregoing reasons, the Defendants' motions for summary judgment are GRANTED on all § 1983 and Title IX claims against Archer, Killough, and the school system. The remaining state claims against those defendants are DISMISSED without prejudice. Still pending are the Plaintiffs' motion for partial summary judgment on all counts against Defendant Peterson and Defendant Faulkner's motion for summary judgment.[4]

So ordered this 21st day of July 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Peterson has not responded to the Plaintiffs' motion for summary judgment against him. Because his response could be relevant to Faulkner's motion for summary judgment, the court will not decide either of those motions until it has received Peterson's response.

17

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 68 in case 2:04-CV-02283 was distributed by fax, mail, or direct printing on July 22, 2005 to the parties listed.

---

Geoffrey Gaia
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Joe L. Wyatt
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Ernest G. Kelly
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

Honorable Samuel Mays
US DISTRICT COURT