IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.
05 AUG 26 PM 4: 19
THOMAS M. GOULD
CLERK, US DISTRICT COURT
W/D OF TN, MEMPHIS

JANE DOE # 1, by and through )
her next friend (mother, )
Jane Doe # 2), and JANE DOE )
# 2, )
 )
    Plaintiffs, )
 )
v. )    No. 04-2283 Ma V
 )
MEMPHIS CITY SCHOOLS, et al., )
 )
    Defendants. )

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GLYNN FAULKNER'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs allege that Plaintiff Jane Doe # 1, a minor student at Kirby High School ("KHS"), was sexually abused by one of her instructors. Plaintiffs' causes of action against Faulkner arise under 42 U.S.C. § 1983 and state law.

Before the court is Defendant Glynn Faulkner's motion, filed on April 1, 2005, seeking summary judgment on Plaintiffs' claims under § 1983 and state law. Plaintiffs responded on June 17, 2005.

### I. Background

The following facts are taken from the complaint. From November, 2002, through February, 2003, Defendant Danny Peterson was a "volunteer" band instructor at KHS, compensated privately by the KHS band booster club. Plaintiff Jane Doe #1 ("Doe"), then a

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on    8-30-05

minor, was a member of the KHS band. (Compl. ¶¶ 9-10.) Peterson took Doe off campus to area motels during school hours, where they engaged in sexual activities. Peterson never signed Doe out to leave campus. (Id. ¶ 11.) Defendant Glynn Faulkner, the KHS band director, knew that Peterson was taking Doe off campus during school hours. (Id. ¶ 12.)

On May 27, 2003, Peterson harassed Doe in the KHS band room after school. (Id. ¶ 15.) On or about May 30, 2003, Plaintiff Jane Doe #2 ("Doe's mother") learned of Peterson's conduct and contacted Defendant Thomas Killough, principal of KHS. Killough pulled Doe's attendance records, which showed numerous unexcused absences about which KHS had never notified Doe's mother. (Id. ¶ 14.) Doe's mother then contacted Defendant Bob Archer, associate superintendent for the school system, about Peterson's conduct. Archer said that he would not act unless law enforcement acted. (Id. ¶ 20.)

After Doe's mother reported Peterson's activities, Peterson began telephoning and harassing Doe. (Id. ¶ 24.) In early June, 2003, Doe's mother petitioned the General Sessions Criminal Court of Shelby County for an order of protection against Peterson. On June 30, the date of the scheduled hearing on the petition, an unknown person or persons shot at Doe's mother's automobile, which was parked in the driveway of her home. (Id. ¶¶ 26-27.) The court granted the protective order against Peterson. (Id. ¶ 28.) After

2

several unsuccessful attempts by Doe's mother, Doe obtained a "safety" transfer to another high school in the school system for her senior year. (Id. ¶ 37.) The Plaintiffs allege that the school system is deliberately indifferent to the "wholesale sexual misconduct" of faculty and staff that occurs throughout the school system. (Id. ¶ 36.)

## II. Jurisdiction

Plaintiffs bring claims under § 1983 and Title IX. Thus, the court exercises federal-question jurisdiction under 28 U.S.C. § 1331. The court has jurisdiction under 28 U.S.C. § 1367 over pendant state law claims.

## III. Legal Standard for Summary Judgment

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary

3

judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

## IV. Analysis

### A. § 1983

Because Plaintiffs do not allege that Faulkner engaged in sexual contact with Doe, his conduct must be evaluated under the § 1983 standards for "supervisory liability." Doe v. Warren Consolidated Schools, 93 Fed. Appx. 812, 818 (6th Cir.

4

2004)(unpublished)(citing Doe v. City of Roseville, 296 F.3d 431, 439 (6th Cir. 2002)). A defendant is not liable under § 1983 if he was merely "sloppy, reckless or negligent in the performance of [his] duties." Roseville, 296 F.3d at 439. Rather, the Plaintiffs must show that Faulkner acted with "deliberate indifference" to Doe's constitutional rights. Doe v. Claiborne County, Tennessee, 103 F.3d 495, 513 (6th Cir. 1996)(quoting Barber v. City of Salem, 953 F.2d 232, 240 (6th Cir. 1992). The courts have interpreted this standard to require that plaintiffs show "the defendants' conduct amounted to a tacit authorization of the abuse" or that the defendant "encouraged the specific incident of misconduct or in some other way directly participated in it." Claiborne County, 103 F.3d at 513 (citing Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)).

Faulkner argues that he was not aware of Peterson's conduct and that he cannot, therefore, be liable under any of the Plaintiffs' causes of action. Plaintiffs' evidence of Faulkner's knowledge consists of Doe's deposition testimony to the effect that Faulkner often saw her leave campus to meet Peterson and advised Peterson to stop taking Doe off campus, and the deposition testimony of Doe's mother that Doe had been informed of a conversation in which Faulkner told Peterson that "I just saw your girlfriend."

Doe's deposition testimony is as follows:

5

... I believe Mr. Faulkner knew because the way we would leave to get off campus because there were cameras everywhere. So, you know, I didn't just go out of any exit. I used to go through the band room. There was a door on the side of the band room that would lead you to the outside. So I used to walk through the band room during my lunch period just so I could get into the car to leave off campus. So Mr. Faulkner would see me leaving to go off campus.

Actually, I remember – I remember at times where Mr. Peterson would tell me that Mr. Faulkner was advising him against taking me off campus because he knew the potential that if it ever got out, some dust would kind of fly. People would get in trouble because of it. So that kind of implies that he knew.

Q. Let me make sure I am right. Mr. Peterson told you that Mr. Faulkner advised him against taking you off campus?

A. Yes ....

Q. And it's your belief that he would recognize you going out that [band room] door during fifth period and what you said was his planning period?

A. Yes.

Q. You believe he would recognize you and –

A. I mean, he probably didn't see me every single time. I am not saying that he saw me every single time.

Q. But you believe that he saw you at least once?

A. Yeah. I mean, I was trying to sneak out, you know, so I wouldn't, while I was walking, turn around looking like this .... I wouldn't turn around to see if he was looking or anything.

Q. You were trying to avoid his recognition?

A. Yes.

(Doe # 1 Depo. 19:2-24, 31:11-32:12.)

Doe's testimony that Faulkner must have seen her sneaking out through the band room does not, without more, impute to Faulkner knowledge of the relationship between Doe and Peterson. Doe did not state that she was with Peterson when she attempted to leave

6

KHS in view of Faulkner's office or otherwise explain how Faulkner would reasonably have expected that she would meet Peterson.

Doe's testimony that Peterson had been advised by Faulkner to stop taking her off campus does, however, suggest that Faulkner knew that some kind of relationship was ongoing between Doe and Peterson. Faulkner argues that this testimony consists of inadmissible hearsay and should not be considered by the court. Doe's testimony contains two out-of-court statements: 1) Faulkner's statement to Peterson advising him not to take Doe off campus and 2) Peterson's repetition of that statement to Doe. Both Faulkner and Peterson are defendants in this action. Thus, both Faulkner's statement to Peterson and Peterson's statement to Doe can be deemed party admissions under Fed. R. Evid. 801(d)(2)(A). See U.S. v. Gibson, 409 F.3d 325, 337 (6th Cir. 2005); Estate of Shafer v. Commissioner, 749 F.2d 1216, 1220 (6th Cir. 1984). Further, it appears that Faulkner's advice to Peterson is not being offered to prove its truth, but to show Faulkner's underlying knowledge of the relationship between Peterson and Doe. See U.S. v. Cuttino, 106 Fed. Appx. 156, 159 (4th Cir. 2004)("An order or instruction,[1] however, is neither true or false and thus cannot be offered for its truth.")(quoting U.S. v. Shepherd, 739 F.2d 510, 514 (10th Cir.

---

[1] Although the advice Faulkner allegedly gave Peterson is not the same as "an order or instruction," for similar reasons, it is not a declarative statement that can be proven true or false. See, e.g., U.S. v. Reliford, 58 F.3d 247, 249 (6th Cir. 1995).

7

1984). Thus, Doe's deposition testimony would be admissible, and the court will consider it.

Doe's mother testified that Doe had told her of a rumor at KHS that Faulkner had told Peterson, "I just saw your girlfriend." (Doe # 2 Depo. 113:18-23.) This statement, as Faulkner suggests, contains multiple levels of hearsay. When asked about this statement herself, Doe responded that it was "one of those things that ... was so insignificant, that I really don't remember." (Doe # 1 Depo. 54:16-18.) Plaintiffs' testimony about Faulkner's purported statement has so little probative value that the court will not consider it in deciding Faulkner's motion for summary judgment.

Doe's deposition testimony about Faulkner's advice to Peterson, considered in the light most favorable to the Plaintiffs, indicates that Faulkner knew of Peterson's relationship with Doe while it was ongoing and while he was in an immediate position of authority to stop it. Thus, there is a genuine issue of material fact about whether Faulkner acted with deliberate indifference to Doe's constitutional rights. See Doe v. Warren Consolidated School Dist., 93 Fed. Appx. at 822 (denying supervisor's motion for summary judgment when he had acknowledged a teacher's abusive behavior toward female students). Thus, Faulkner's motion for summary judgment on Plaintiffs' § 1983 claims must be DENIED.

**B. State Law Claims**

Plaintiffs also bring state law claims against Faulkner. Tennessee law provides that:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment ....

Tenn. Code Ann. § 29-20-205 (hereinafter, "the TGTLA"). The Tennessee Supreme Court has interpreted this provision to "expressly waive immunity for injuries proximately caused by a negligent act or omission of a governmental employee." Limbaugh v. Coffee Medical Center, 59 S.W.3d 73, 78 (Tenn. 2001). Because Plaintiffs do not allege that Faulkner sexually abused Doe, most of Plaintiffs' claims against him are based on his alleged "negligent act or omission." The TGTLA further provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter ...." Tenn. Code Ann. § 29-20-310(b). Because the TGTLA has removed the immunity of Faulkner's employer, the school system, from damages, the Plaintiffs may not bring state law claims against Faulkner.

The TGTLA does not remove immunity when the claim arises from a school employee's "infliction of mental anguish." Tenn. Code. Ann. § 29-20-205(2). To the extent that this exception corresponds with Plaintiffs' claim against Faulkner for intentional infliction

9

of emotional distress, Plaintiffs' claim against him is not barred by the TGTLA. For a plaintiff to succeed on a cause of action for intentional infliction of emotional distress, 1) the conduct complained of must be intentional or reckless, 2) the conduct must be so outrageous that it is not tolerated by a civilized society, and 3) the conduct must result in serious mental injury. <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997). "It has not been enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." <u>Id.</u> at 623. Plaintiffs do not, in response either to Faulkner's motion or to his statement of facts, point to specific evidence demonstrating that either of them has suffered a serious mental injury because of Faulkner's behavior. Because serious mental injury is an essential element of a claim for intentional infliction of emotional distress, Plaintiffs cannot survive summary judgment on their claim.

## V. Conclusion

For the foregoing reasons, Defendant Glynn Faulkner's motion for summary judgment is DENIED on Plaintiffs' § 1983 claim and GRANTED on Plaintiffs' state law claims.

So ordered this  26th  day of August 2005.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 85 in case 2:04-CV-02283 was distributed by fax, mail, or direct printing on August 30, 2005 to the parties listed.

---

Ernest G. Kelly
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Geoffrey Gaia
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Joe L. Wyatt
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

Honorable Samuel Mays
US DISTRICT COURT